# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

JASON B. STOREY,

      Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

No. C 14-4104-MWB

**MEMORANDUM OPINION AND ORDER ON THE MERITS**

_____

## TABLE OF CONTENTS

*I.*    *INTRODUCTION ................................................................................ 2*
   *A.*    *Factual Background ................................................................... 2*
   *B.*    *The Action For Judicial Review ................................................. 4*

*II.*    *LEGAL ANALYSIS ............................................................................. 5*
   *A.*    *Standard Of Review .................................................................. 5*
   *B.*    *Review Of Storey's Challenges .................................................. 7*
      *1.*    *The credibility determination ........................................... 7*
         *a.*    *Arguments of the parties ....................................... 7*
         *b.*    *Analysis ............................................................... 8*
      *2.*    *The residual functional capacity determination ................. 11*
         *a.*    *Arguments of the parties ..................................... 11*
         *b.*    *Analysis ............................................................. 12*
      *3.*    *The available jobs determination .................................... 14*
         *a.*    *Arguments of the parties ..................................... 14*
         *b.*    *Analysis ............................................................. 15*

*III.*    *CONCLUSION .................................................................................. 17*

This is an action for judicial review by plaintiff Jason B. Storey of a final decision of the Commissioner of Social Security (the Commissioner) denying Storey's application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. Storey asserts that the administrative law judge (ALJ), whose decision became the Commissioner's final decision, improperly discounted his credibility and, consequently, improperly determined his residual functional capacity (RFC), and that the ALJ's decision that he could perform available jobs is not supported by substantial evidence. The Commissioner contends that there are no errors in the ALJ's determination that Storey is not disabled, so that the ALJ's decision should be affirmed.

## I. INTRODUCTION

### A. *Factual Background*

Storey filed an application for disability benefits dated February 14, 2012, alleging a disability onset date of approximately July 22, 2011. However, SSI payments are not payable for a period prior to the application date, pursuant to 20 C.F.R. § 416.335, so the relevant period for a determination of whether or not Storey was disabled is from February 14, 2012, the date of his application, through June 11, 2013, the date of the ALJ's decision. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

Eventually, Storey's application proceeded to a hearing before an ALJ on May 6, 2013. In her Decision, dated June 11, 2013, *see* Transcript Of Record, Part 3 (docket no. 8-2), the ALJ considered whether Storey was disabled on the basis of degenerative disc disease of the cervical spine with cervical spondylosis and cervical radiculopathy; degenerative joint disease of the right shoulder; and obesity. The ALJ made the following numbered findings of fact and conclusions of law in bold font:

**1.** The claimant has not engaged in substantial gainful activity since February 14, 2012, the application date (20 C.F.R. 416.971 *et seq*.).

**2.** The claimant has the following severe impairments: degenerative disc disease of the cervical spine with cervical spondylosis and cervical radiculopathy; and degenerative joint disease of the right shoulder; and obesity (20 C.F.R. 416.920(c)).

**3.** The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

**4.** After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b). The claimant is able to lift up to 10 pounds frequently and 20 pounds occasionally primarily with the left non-dominant upper extremity. The claimant can sit about 6 hours in an 8-hour day with normal breaks. The claimant is limited to standing and walking for 4 hours in an 8-hour day. The claimant should never climb ladders/ropes/scaffolds or crawl. The claimant can occasionally climb stairs/ramps, balance, stoop, kneel and crouch. The claimant can occasionally reach overhead with the right dominant upper extremity and frequently reach overhead with the left non-dominant upper extremity. The claimant can frequently handle and finger with right dominant upper extremity. The claimant should avoid concentrated exposure to work around hazards such as dangerous moving machinery and unprotected heights.

**5.** The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

**6.** The claimant was born on October 24, 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

> **7.** The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).
>
> **8.** Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> **9.** Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969(a)).
>
> **10.** The claimant has not been under a disability, as defined in the Social Security Act, since February 14, 2012, the date the application was filed (20 C.F.R. 416.920(g)).

Transcript of Record, Part 3, 12-20. Consequently, the ALJ concluded, "Based on the application for supplemental security income protectively filed on February 14, 2012, the claimant is not disabled under section 1514(a)(3)(A) of the Social Security Act." *Id*. at 20. On September 19, 2014, the Appeals Council denied Storey's request for review; thus, the ALJ's decision operates as the Commissioner's final decision.

### B. *The Action For Judicial Review*

Storey filed his Complaint (docket no. 2) initiating this action for judicial review on November 18, 2014. On February 19, 2015, the Commissioner filed an Answer (docket no. 7) and the Social Security Transcript Of Record (docket no. 8).

Pursuant to Orders (docket nos. 9 and 11) setting a briefing schedule and extending the deadline for Storey's brief, respectively, Storey filed his original Brief And Argument (docket no. 12) on April 16, 2015. In an Order Re: Briefing (docket no. 13), filed April 20, 2015, Judge Donald E. O'Brien, to whom the case was then assigned, directed Storey

4

to file a supplemental brief addressing specific issues identified in that Order and set a new briefing schedule.

On May 8, 2015, Storey filed his Supplemental Brief (docket no. 14). On July 7, 2015, the Commissioner filed her Brief (docket no. 15) addressing arguments raised in both Storey's original Brief and his Supplemental Brief. Storey filed no reply to the Commissioner's Brief. Therefore, this case was ready for decision on July 20, 2015.

On August 20, 2015, this case was reassigned to me. I do not find oral arguments to be necessary, so I will decide this case, on the merits, on the parties' written submissions.

## II. LEGAL ANALYSIS
### A. Standard Of Review

In an action for judicial review, in which an ALJ's decision denying social security benefits has become the Commissioner's final decision, the court must, first, "'determine whether the ALJ's decision complies with the relevant legal requirements.'" *Hesseltine v. Colvin*, ___ F.3d ___, ___, 2015 WL 5023479, *3 (8th Cir. Aug. 26, 2015) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Those legal requirements, broadly, are that, in making a disability determination under the Social Security Act, the ALJ must engage in a five-step process:

> During this process the ALJ must determine: "1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006) (quotation omitted); *see also* 20 C.F.R. § 416.920. If, at any point in this five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir.2005).

*Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). As the Eighth Circuit Court of Appeals has explained, "'The fourth step in this analysis requires the ALJ to determine a claimant's RFC,' which is the disability claimant's burden to establish." *Id.* (quoting *Goff*, 421 F.3d at 790). A claimant is not entitled to benefits at step five in the process, "if . . . the Commissioner shows [the claimant] has the physical RFC 'to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.'" *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

On judicial review, a court must also "'determine whether the ALJ's decision . . . is supported by substantial evidence in the record as a whole.'" *Hesseltine*, ___ F.3d at ___, 2015 WL 5023479 at *3 (quoting *Halverson*, 600 F.3d at 929). The Eighth Circuit Court of Appeals has "defined substantial evidence as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" *Hesseltine*, ___ F.3d at ___, 2015 WL 5023479 at *3 (quoting *Halverson*, 600 F.3d at 929); *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) ("Substantial evidence is 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). More specifically,

> "We must consider evidence that both supports and detracts from the ALJ's decision, but we will not reverse an administrative decision simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir.2011) (quotations and citations omitted). Indeed, we must affirm the denial of benefits if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Id.* (quotations and citations omitted).

*Milam*, 794 F.3d at 983.

With these standards in mind, I turn to a review of Storey's challenges to the ALJ's determination that he is not disabled.

### B. *Review Of Storey's Challenges*

As noted, above, Storey's challenges to the ALJ's decision are (1) that the ALJ improperly discounted Storey's credibility; (2) that the ALJ, consequently, improperly determined Storey's RFC; and (3) that the ALJ's decision is not supported by substantial evidence. I will consider these objections in turn.

#### 1. *The credibility determination*
##### a. *Arguments of the parties*

Storey challenges the ALJ's finding, in the ALJ's explanation to finding **4.**, quoted above, concerning Storey's RFC, that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for reasons explained in this decision." *See* Transcript of Record, Part 3, at 16. Storey contends that what follows in the ALJ's decision is not a list of any specifics of incredibility, but a general discussion of how his complaints seemed inconsistent with various reports in the record. In contrast, Storey contends—albeit without citation to any authority—the most important issue regarding his ability to do light work is whether he can regularly reach with his dominant right arm. In support of his contention that he cannot do light work, Storey points to his testimony that, when returning cans, he can insert 100 cans into the can counter, but must use his left arm after about 25 cans, or he will have bad neck pain. He contends that his explanation about switching arms fell on deaf ears, notwithstanding that an ARNP stated, in an April 2013 assessment, that his credibility with regard to claims of pain was "good," citing Transcript of Record at 508-09.

In response, the Commissioner argues that, when evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence and any evidence relating to the claimant's daily activities; duration, frequency, and intensity of

7

pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions, citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Commissioner also argues that the ALJ properly found Storey's complaints inconsistent with objective medical evidence and that doing so is proper, citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Furthermore, the Commissioner points out that the ALJ observed that Storey's September 2012 surgery alleviated Storey's symptoms. Indeed, the Commissioner points out that Storey relies on evidence from prior to that surgery—and, for the most part, prior to his application—to support his claim, while largely ignoring later treatment records showing improvement. The Commissioner also argues that the ALJ properly interpreted Storey's testimony about his ability to recycle cans and incorporated the limits that the ALJ found credible into her RFC determination and hypothetical question to a vocational expert.[1] In short, the Commissioner contends that the ALJ properly considered the entire record, properly discounted Storey's subjective statements, where they were inconsistent with the record, and properly explained why she did so.

  **b.**  *Analysis*

The Eighth Circuit Court of Appeals recently summarized the standards for discounting a claimant's subjective complaints of impairments, as follows:

> "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir.2001) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). This includes evidence pertaining to "the claimant's daily activities"; "the duration, frequency and

---

[1] The Commissioner also argues that the ALJ noted that Storey had been incarcerated for 7 years for drug-related crimes and that an ALJ may properly consider a claimant's criminal convictions in the credibility analysis. I do not find that the ALJ relied on Storey's criminal convictions as a basis for discounting his credibility, however.

8

> intensity of the pain"; "precipitating and aggravating factors"; "dosage, effectiveness and side effects of medication"; and "functional restrictions." *Polaski*, 739 F.2d at 1322. Of course, "[t]he ALJ need not explicitly discuss each *Polaski* factor. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004) (internal citations omitted). "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole. If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." *Perkins [v. Astrue]*, 648 F.3d [892,] 900 [(8th Cir.2011)] (quotations and citations omitted).

*Milam*, 794 F.3d at 984.

I conclude that this is a situation in which the ALJ gave good reasons for discounting Storey's credibility, so that I should defer to the ALJ's judgment. *Id.* Indeed, Storey completely misses the point with his contention that the ALJ's credibility determination cannot stand, because what follows it is not a list of any specifics of incredibility, but a general discussion of how his complaints seemed inconsistent with various reports in the record. Inconsistency with the evidence as a whole, and specifically with medical records, is *precisely* what the ALJ may consider in discounting a claimant's credibility. *See id.* ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Andrews*, 791 F.3d at 929 ("Subjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony."); *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (specifically listing inconsistency with, or lack of support in, the medical findings and treatment among the factors that the ALJ properly concluded detracted from the credibility of the claimant's complaints). Also, contrary to Storey's contentions, Storey's subjective testimony about differences in his ability to perform tasks with his dominant

9

and non-dominant arms, such as recycling cans, did not fall on "deaf ears." Rather, the ALJ's formulation of Storey's RFC, as set forth in numbered finding **4.**, quoted above, specifically and repeatedly incorporated differences in Storey's abilities with his dominant and non-dominant hands or arms.

Furthermore, I note that the ALJ went through a quite exhaustive review of the record in her explanation of her numbered finding **4.**, concerning Storey's RFC. *See* Transcript of Record, Part 3, 15-18. In particular, I note that the ALJ considered the effect of Storey's surgery in September 2012, which Storey essentially ignores in his briefing. After citing post-operation records indicating normal progress, *see id.* at 17, the ALJ explained,

> The undersigned acknowledges that the surgery apparently took some time to schedule and the claimant necessarily required a reasonable period of postsurgical convalescence. However, the record does not reflect that the claimant experienced pre-surgery deterioration which would preclude activities consistent with the residual functional capacity as established above. The undersigned further notes that the record reflects that the claimant has essentially steadily improved after the surgery. The claimant was recently seen and stated that he had been improving slowly in terms of pain about the arm and shoulder (Exhibit 12F 2). The claimant also reported that he continued to become easily fatigued with activity (Exhibit 12F 2). However, the claimant continued to present in no acute distress with no agitation into December 2012 and thereafter notwithstanding his continuing allegation of disability with reported pain level of 7 (Exhibit 11F 3-4, 7-8, 12F 3). The claimant also acknowledged that he was exercising 5-7 days per week (Exhibit 12F 3). The claimant further noted that he was actively trying to lose weight, with the record reflecting that he had some success in weight reduction (Exhibits 11F 2; 12F 4). Again, the undersigned has considered the overall record and cannot find that the claimant has been any more limited than allowed for in the

10

> residual functional capacity established above, and certainly
> not for any full and continuous 12-month period. Of note, the
> evidence does not support a conclusion that the claimant's
> condition declined so precipitously to warrant a finding that
> he went from performing medium to heavy work to being
> unable to engage in a reduced level of light work as referenced
> in the residual functional capacity as established.

Transcript of Record, Part 3, 18. The ALJ's consideration of these activities is entirely consistent with the *Polaski* standards. *See Milam*, 794 F.3d at 984 (citing *Polaski*, 739 F.2d at 1322).

I find good reason to defer to the ALJ's credibility determination and no good reason to reject it. Storey's challenge to the ALJ's credibility determination, thus, fails.

### 2. *The residual functional capacity determination*

#### a. *Arguments of the parties*

Storey next challenges the ALJ's determination of his RFC, not least because he contends that the ALJ improperly discounted his credibility. He contends that the ALJ's conclusion that he had the RFC to perform light work was equivalent to deciding the case at step 4 of the process. In his original Brief, Storey contends that the ALJ's determination of his RFC is inconsistent with various treatment records, but he cites only medical records from prior to his surgery in September 2012, and his subjective testimony at the hearing before the ALJ. He also contends, again in his original Brief, that it is not clear where the information concerning exertional limitations and postural limitations set forth by the ALJ are to be found in the record. He contends that this is so, even though the ALJ explained that she had considered all symptoms and the extent to which those

symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.[2]

The Commissioner contends, however, that substantial evidence supports the ALJ's determination of Storey's RFC. The Commissioner contends that the ALJ properly relied on medical records, physician's observations, and Storey's subjective statements—to the extent that the ALJ found them credible. The Commissioner points out that Storey's contrary contentions rely on medical records and statements in treatment records from before his surgery—indeed, before his application for disability benefits—but subsequent treatment records show that Storey's impairments had improved. For example, the Commissioner directs my attention to post-surgery notes showing that Storey's physician released him to activity as tolerated, with a restriction on *heavy* lifting for only six weeks, as well as other follow-up records indicating Storey was improving. In short, the Commissioner contends that substantial evidence supports the ALJ's RFC determination and that I should affirm the ALJ's decision.

### b. Analysis

Again, determination of RFC is part of the fourth step of the five-step process of disability determination. *Andrews*, 791 F.3d at 928. More specifically, as the Eighth Circuit Court of Appeals has explained,

> "Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work." *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009). "The ALJ must determine the claimant's RFC based on all relevant

---

[2] Storey's specific contention, in his Supplemental Brief, with regard to what he contends is an improper determination of his RFC actually relies on limitations that his counsel proposed to the vocational expert and that the vocational expert concluded would leave Storey unable to perform the "light work" jobs that the vocational expert had identified. *See* Plaintiff's Supplemental Brief at 3. Whether jobs exist within a claimant's RFC, however, is a question at step 5 of the process, not a question of the extent of the claimant's RFC. *See, e.g., Andrews*, 791 F.3d at 928; *Papesh*, 786 F.3d at 1131.

> evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir.2003). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir.2012) (brackets omitted). [The claimant] bears the burden of proving her RFC. *See Baldwin*, 349 F.3d at 556.

*Papesh*, 786 F.3d at 1131. Furthermore,

> "[A] statement by a medical source that a claimant is disabled does not necessarily mean the Commissioner will find the claimant disabled," *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004), and . . . the ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Wildman [v. Astrue]*, 596 F.3d [959,] 969 [(8th Cir.2010)] (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir.2000)).

*Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015). RFC is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

I conclude that the ALJ's determination of Storey's RFC, a determination ultimately reserved to the ALJ, here, where the ALJ's decision is the Commissioner's decision, *see id.*, is supported by substantial evidence. *See Milam*, 794 F.3d at 983. To put it another way, I find that Storey has failed to meet his burden to show that his RFC precludes even "light work." *Papesh*, 786 F.3d at 1131. Storey cannot reasonably argue that the ALJ did not base her RFC determination on all relevant evidence, including medical records, observations of treating physicians and others, and Storey's own descriptions of his limitations. *Id*. The ALJ painstakingly detailed the medical records and Storey's subjective complaints from both before and after his surgery. *See* Transcript of Records, Part 3, at 15-18. The ALJ properly resolved the "conflict" in the records that Storey implicitly relies on, where Storey points to records from *before* his surgery

13

to support his contentions, while largely ignoring post-surgery records that support a much less restrictive RFC. The ALJ considered both sets of records, and relied on the later records, within the period for which Storey claimed benefits, as properly indicating his RFC during the period for which benefits might be available. *Id.* (explaining that it is the ALJ's function to resolve conflicts in medical opinions and records). While there may be no medical records explicitly pointing to "light work" limitations, there are records from which the ALJ could properly conclude that Storey was only restricted from *heavy* work, as "heavy work" restrictions are occasionally noted—albeit as temporary.

Storey's challenge to the ALJ's RFC determination, thus, fails.

### 3. *The available jobs determination*
#### a. *Arguments of the parties*

Storey's final challenge is that there is not substantial evidence to support the ALJ's determination that he could perform other work that exists in substantial numbers in the national economy. In support of this contention, Storey reiterates an argument that I bypassed, above, as out of place: that the ALJ omitted a key fact from her hypothetical question to the vocational expert, which, when acknowledged, would have led to a conclusion that Storey could not perform "light work" jobs that exist in substantial numbers in the national economy. Specifically, Storey argues that the ALJ's RFC, and her hypothetical question to the vocational expert, left out his restrictions on use of his dominant arm, based on the testimony about recycling cans. Storey contends that, when his attorney posed a properly formulated hypothetical question to the vocational expert, the vocational expert admitted that there would not be jobs that he could perform.

In response, the Commissioner argues that the ALJ properly left out of her hypothetical questions subjective limitations that she did not fully credit. The Commissioner contends that the ALJ may properly rely on a vocational expert's response to a properly formulated hypothetical question as the basis for a determination that there

14

are jobs that a claimant can perform. The Commissioner argues that the ALJ did just that, here, so that Storey's final challenge should fail.

### b. Analysis

This challenge is, in essence, a challenge to the ALJ's determination at step five of the process. *See Andrews*, 791 F.3d at 928. As explained above, a claimant is not entitled to benefits at step five in the process, "if . . . the Commissioner shows [the claimant] has the physical RFC 'to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.'" *Papesh*, 786 F.3d at 1131 (quoting *Phillips*, 671 F.3d at 702). A vocational expert's testimony in response to a properly formulated hypothetical question "constitutes substantial evidence supporting the ALJ's determination that [a claimant] could perform . . . work." *Milam*, 794 F.3d at 985 (citing *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996), which states, "Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence."); *Bernard v. Colvin*, 774 F.3d 482, 490 (8th Cir. 2014) (concluding that there was substantial evidence in the record to support a denial of benefits, based on a vocational expert's answers to the ALJ's hypothetical question, which indicated that there was a significant number of jobs available to a person in the claimant's condition). A properly formulated hypothetical question is one that captures the concrete consequences of a claimant's deficiencies or limitations. *See Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014). Also, it is a question that "includes the impairments supported by substantial evidence and found credible by the ALJ." *Blackburn v. Colvin*, 761 F.3d 853, 860-61 (8th Cir. 2014).

In support of his contention that the ALJ's hypothetical question was flawed, so that the vocational expert's response does not constitute substantial evidence of his ability to work, Storey relies on the following question to the vocational expert by his attorney:

> Q. And then I'd also like to ask assuming that—that this hypothetical individual was limited to reaching or exerting with his dominant upper extremity to maybe 25 repetitions in a two or three-hour period, and I realize I'm not talking about any weight in that—in that rough hypothetical, but assuming that the claimant would be limited to maybe 25 or so repetitions with his right upper extremity before experiencing enough pain that he had to rest for some time at least, would he be able to perform the jobs that you've talked about?
>
> A. No, he would not.

Transcript of Record, Part 3, at 54.

Storey's reliance is misplaced. First, the attorney's formulation overstates the limitations on Storey's use of his right arm by inserting a time period and rest requirements that are not reflected in Storey's testimony, which was that he switches to use of his left arm when he starts "feeling it" with his right arm. *See* Transcript of Record at 33-35. Second, the ALJ's hypothetical question to the vocational expert did incorporate differences in Storey's ability to use his dominant and non-dominant arms to the extent that the ALJ found Storey's testimony about those differences credible. *See id*. at 48-53; *see also Blackburn*, 761 F.3d at 860-61 (the ALJ is only required to incorporate into a hypothetical question limitations that the ALJ finds credible). Third, I conclude that the ALJ's hypothetical question to the vocational expert properly captured the concrete consequences of Storey's deficiencies or limitations. *See Gieseke*, 770 F.3d at 1189. Thus, the vocational expert's response, indicating that "light work" jobs existed in significant numbers in the national and regional economy that Storey could perform "constitutes substantial evidence supporting the ALJ's determination that [Storey] could perform . . . work." *Milam*, 794 F.3d at 985.

Thus, Storey's last challenge to the ALJ's decision denying him disability benefits also fails.

### III.   CONCLUSION

Upon the foregoing, the determination of the Commissioner that Storey is not disabled within the meaning of the Social Security Act is **affirmed**. Judgment shall enter in favor of the Commissioner and against Storey.

**IT IS SO ORDERED**.

**DATED** this 14th day of October, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA